

CLERK, U.S. BANKRUPTCY COURT
DISTRICT OF OREGON
JAN 2 6 2005
LODGED____
PAID____ RECD
____ DOCKETED____

# United States Bankruptcy Court
## for the District of Oregon

**Albert E. Radcliffe, Chief Judge**
Virginia H. Denney, Judicial Assistant
Howard J. Newman, Law Clerk

151 West Seventh Avenue, Suite 300
Post Office Box 1335
Eugene, Oregon 97440

(541) 465-6802
FAX: (541) 465-6899

January 25, 2005

Mr. James A. Marshall
PO Box 1265
Albany, OR 97321

Mr. Melvin Rollema
PO Box 1409
Albany, OR 97321

RE:   BALDWIN, David Lee; Case No. 603-70247-aer7
      Glossin v. Baldwin; Adversary Proceeding No. 04-6068-aer
      Plaintiff's Motion for Summary Judgment

Counsel:

This letter is intended to announce my ruling on the above-referenced motion.

This is a case brought by Plaintiff under 11 U.S.C. §§ 523(a)(2) & (6).[1] Defendant has answered denying the material allegations. Plaintiff has now moved for summary judgment, supported by a concise statement, affidavit and memorandum. The exhibits referenced in the motion are trial exhibits already proffered. Defendant has not responded to the motion. It is ripe for decision.

<u>Facts</u>: Plaintiff's affidavit and exhibits indicate the following:

In fall, 2001 Plaintiff was 82 years old and attempting to sell his 1991 Chevrolet van (the Van). Defendant contacted Plaintiff and expressed interest in purchasing the Van. Defendant told Plaintiff he was a painting contractor and proposed to paint Plaintiff's home in Lebanon, Oregon, as part of the consideration.

On October 1, 2001 the parties entered into a written contract whereby Defendant purchased the Van for $4,500, $2,500 of which was to be credited for painting Plaintiff's home. Upon the painting's completion, the $2,000 balance was to be paid in cash, whereupon Plaintiff

---

[1] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code.

would release and sign over the Van to Defendant. Defendant prepared the contract on a form bearing his assumed business name "Home Improvement Services."

Either at the time the parties first met or when the contract was executed, Defendant gave Plaintiff his business card, on which a Construction Contractors Board (CCB) license number appears.

Based on the above, it appeared to Plaintiff that Defendant had an active painting business. However, Defendants' CCB license was not current, having lapsed in 1996. Defendant did not have the bond or insurance which the law requires construction contractors to carry.

In entering into the contract, Plaintiff relied on Defendant having a current CCB license and an active painting business.

Defendant completed painting Plaintiff's home, and on or about October 5, 2001 approached Plaintiff and proposed that Plaintiff transfer the Van in exchange for a $2,000 check post dated to December 4, 2001. Defendant represented that the funds to cover the check were or would be on deposit at his bank by the check's date. To further reassure Plaintiff of his good faith, Defendant left his 1986 Chevrolet pick-up with Plaintiff.

Plaintiff agreed to accept the postdated check, signed the Van's title over to Defendant, and gave Defendant possession of the Van. At that time, Defendant transferred the Chevrolet pick-up's battery to the Van.

In agreeing to accept the postdated check, Plaintiff relied on Defendant having a current CCB license, an active painting business, and that funds were, or would be on deposit to cover the check by the check's date.

Plaintiff presented the check for payment at Defendant's bank shortly after December 4, 2001 but was advised it could not be covered due to non-sufficient funds (NSF). Plaintiff then attempted several times to contact Defendant by phone, but Defendant failed to take his calls or return messages. On December 24, 2001 and December 31, 2001, Plaintiff again presented the check for payment and each time it was returned NSF.

At the material times above, Plaintiff's spouse was ill, with her condition worsening. Plaintiff was preoccupied with his wife's health, and other related concerns. This preoccupation and distress concerning his wife's health problems interfered with his normal caution in his business dealings. Plaintiff's wife passed away on March 29, 2002.

After statutory demand, Plaintiff brought suit in Linn County Circuit Court on the NSF check, and received a judgment by default (the default judgment) on or about June 21, 2002 for the following amounts: $2,000.00 with simple interest at 9% from December 4, 2001; $2,500.00 statutory damages; $5,958.70 in attorney's fees; and $1,003.00 in costs. These latter three (3) items all bear simple interest at 9% from the default judgment's date.

Defendant then failed to comply with an order requiring him to appear for a judgment debtor's examination, and an order was entered on November 27, 2002 requiring him to appear and show cause why he should not be found in contempt. Defendant failed to appear for the show cause hearing, and an order was entered authorizing the issuance of a warrant for his arrest. The arrest warrant was issued on February 20, 2003. The Deschutes County sheriff arrested Defendant on April 28, 2003.

On August 18, 2003 Defendant appeared in Linn County Circuit Court and admitted his willful contempt. The court pronounced Defendant in contempt and on October 8, 2003, a judgment imposing remedial contempt sanctions was entered whereupon the court imposed a sentence of ten (10) days incarceration, which was suspended. Defendant was put on six (6) months probation subject to certain conditions, including that he not violate any laws (excluding minor traffic infractions). Plaintiff was awarded $785.00 in attorney's fees. Those fees were satisfied from Defendant's security deposit.

On November 17, 2003, an Order was entered on Plaintiff's motion, requiring Defendant to turn over the keys and title transfer documents to certain vehicles within 7 days of service thereof, and to assemble and allow Plaintiff to take possession of said vehicles within fourteen (14) days of service, all to aid Plaintiff in satisfying the default judgment.

Defendant did not timely turn over the keys and title documents. Plaintiff moved for contempt, and on November 28, 2003, an order to show cause re: contempt was entered, as well as an order to show cause why Defendant's probation should not be revoked. The show cause hearing was set for December 18, 2003.

Defendant filed his Chapter 7 petition herein on December 17, 2003.

In and around February 25, 2004, Defendant responded to requests for admission in the Linn County Circuit Court case, in which he admitted his failure to comply with the November 17, 2003 order.

On March 30, 2004, Defendant was granted his discharge and his Chapter 7 case was closed as "no asset."

On July 27, 2004 the show cause hearing re: contempt for violation of the November 17, 2003 order and to revoke probation was held. By Supplemental Judgment entered August 18, 2004, the Linn County Circuit Court found Defendant in willful contempt for failure to comply with the November 17, 2003 order. The court revoked Defendant's probation, and awarded Plaintiff a judgment of $500.00 in attorney's fees.

Summary Judgment Standards:

On a motion for summary judgment, the moving party has the burden to establish the absence of a material issue of fact for trial. FRCP 56(c). The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Service., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Material facts are such facts as may affect

the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L. Ed. 2d 202, __ (1986).

With regard to its own claims or defenses, (i.e. those elements for which the moving party bears the burden of proof at trial) the movant must support its motion with evidence-using any of the materials specified in Rule 56(c)-that would entitle it to a directed verdict if not controverted at trial. Celotex Corporation v. Catrett, 477 U.S. 317, 331, 106 S. Ct. 2548, 2557, 91 L. Ed. 265, __ (1986)(Brennan, J)(dissent). There must be more than a "scintilla," indeed the evidence must be "significantly probative." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202, __ (1986).

All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Simone v. Manning, 930 F. Supp. 1434 (D. Or. 1996). When different ultimate inferences can be reached summary judgment is not appropriate. Id.

Questions of motive and intent are generally not appropriate for disposition on summary judgment. Fantasy, Inc. v. Fogerty, 984 F.2d 1524 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517, 114 S.Ct. 1023, 127 L. Ed. 2d 455 (1994).

Unless the moving party meets its initial burden of establishing the absence of a material issue of fact, summary judgment must be denied even if no opposing evidentiary matter is presented. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160-161, 90 S.Ct. 1598, 1610, 26 L. Ed. 2d 142, __ (1970).

Discussion

Claim #1:

Claim #1 seeks a declaration that the default judgment should be excepted from discharge under § 523(a)(2)(A).[2]

Under § 523(a)(2)(A), a plaintiff must prove:

1) the debtor made representations;
2) at the time she knew the representations were false;
3) she made them with the intention and purpose of deceiving the plaintiff;
4) the plaintiff justifiably relied on the representations; and
5) the plaintiff sustained the alleged loss and damage as a proximate result of the representations having been made.

---

[2] The complaint can be construed as alleging both §§ 523(a)(2)(A) and (B) claims. I have found nothing in the evidentiary material supporting a § 523(a)(2)(B) claim, in that there is nothing adduced resembling a financial statement or other indication of Defendant's overall financial situation.

Anastas v. American Savings, Bank *(In Re Anastas)*, 94 F.3d 1280 (9th Cir. 1996). The misrepresented fact must be material. Tsurukawa v. Nikon Precision, Inc. *(In re Tsurukawa)*, 287 B.R. 515, 520 (9th Cir. B.A.P. (N.D. Cal.) 2002). Fraudulent intent may be inferred from all the facts and circumstances surrounding the transaction. Beneficial California, Inc. v. Brown *(In re Brown)*, 217 B.R. 857 (Bankr. S.D. Cal. 1998). A reckless disregard for the truth or falsity of the representation is sufficient to meet the intent element. Anastas, supra.[3]

The default judgment imposed liability for an NSF check, and is sufficient to liquidate Plaintiff's underlying claim. However, as discussed below, it is insufficient, in and of itself, to prove the elements (by the doctrine of collateral estoppel) of his § 523 fraud case.

Plaintiff argues fraud in the inducement of the original contract, and also fraud in inducing him to accept the postdated check.

As to fraud in the inducement, as the facts above indicate, defendant falsely represented that he had a current CCB license.[4] Further, because the license had lapsed five (5) years before, I can only infer that Defendant knew his representation was false, or that he was at least reckless as to its truth or falsity. However, even assuming the misrepresentation regarding the CCB license induced Plaintiff to enter into the original contract, that misrepresentation must also

---

[3] A "reckless disregard for the truth" has been explained as follows:

> A representation may be fraudulent, without knowledge of its falsity, if the person making it 'is conscious that he has merely a belief in its existence and recognizes that there is a chance, more or less great, that the fact may not be as it is represented.'

Gertsch v. Johnson & Johnson Finance Corp. *(In re Gertsch)*, 237 B.R. 160, 168 (9th Cir. B.A.P. (C.D. Cal.) 1999) (quoting Restatement Second of Torts, § 526, cmt. e (1977)).

Alternatively,

> [R]eckless indifference to the actual facts, without examining the available source of knowledge which lay at hand, and with no reasonable ground to believe that it was in fact correct is sufficient to establish the knowledge element
> ....

Advanta National Bank v. Kong *(In Re Kong)*, 239 B.R. 815, 827 (9th Cir. B.A.P. (N.D. Cal.) 1999) (internal quotations and citations omitted).

[4] Plaintiff also alleges that Defendant falsely represented he had an active painting business. To the extent, "active" means "licensed", as discussed above, this was false. To the extent "active" means "ongoing", Plaintiff has failed to meet his burden on summary judgment of adducing probative evidence showing this statement's falsity. Plaintiff's concise statement notes that Defendant testified at his § 341 meeting of creditors that he had not operated a painting business since approximately 1998. However, Plaintiff has not adduced the transcript of that hearing. As such, an issue of fact exists as to this statement's falsity.

proximately cause damages.[5] Here, the original contract called for Defendant to complete $2,500 worth of painting and then provide $2,000 <u>cash,</u> before Plaintiff would release the Van. Plaintiff makes no claim for damages based on substandard painting. As such, there is at least an issue of fact as to whether Plaintiff's damages proximately flowed from the original inducement of the contract, or instead solely from his decision after the painting was completed, to alter the contract and release the Van in exchange for a postdated check (instead of cash), which was, in essence, a decision to extend credit.[6]

As to the decision to accept the postdated check, Plaintiff alleges he relied on the same representations discussed above, as well as Defendant's representation that funds were, or would be, on deposit to cover his postdated check. Defendant's representation regarding an "active painting business" is discussed in f.n. #4. As to Defendant's false representation regarding a valid CCB license, as noted above, the misrepresented fact must be "material" to be actionable. A misrepresentation is material, for § 523(a)(2)(A) purposes, if a reasonable creditor would consider the information to be important in his decision to extend credit. <u>Mitchell v. Barnette</u> *(In re Barnette)*, 281 B.R. 869 (Bankr. W.D. Pa. 2002). In this regard, I find an issue of fact exists as to the statement's materiality, especially given that only two (2) months of credit was extended and the extension came <u>after</u> satisfactory completion of the work to which the license applies.[7]

Finally, as to Defendant's representation that funds were, or would be, on deposit to cover his postdated check,[8] giving Defendant all reasonable inferences, I find an issue of fact

---

[5]       'Proximate cause is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible.' *Id. [Britton v. Price (In re Britton)*, 950 F.2d 602] at 604. Moreover, as the United States Supreme Court explained in *Field*, a court may turn to the Restatement (Second) of Torts (1976), 'the most widely accepted distillation of the common law of torts' for guidance on this issue. *Field*, 516 U.S. at 68-70, 116 S.Ct. at 443.

      The Restatement (Second) of Torts (1976) explains that proximate cause entails (1) causation in fact, which requires a defendant's misrepresentations to be a substantial factor in determining the course of conduct that results in loss, § 546; and (2) legal causation, which requires a creditor's loss to 'reasonably be expected to result from the reliance.' § 548A.

<u>Brown, supra</u> at 862.

[6] "Proximate causation" is a question of fact, not law, in the § 523(a)(2) context. <u>Anastas, supra</u> at 1283 (requisite elements of a § 523(a)(2)(A) claim are factual determinations); <u>see also, Candland v. Insurance Company of North America</u> *(In re Candland)*, 90 F.3d 1466 (9th Cir. 1996).

[7] "Materiality" is also a question of fact, not law, in the § 523(a)(2) context. <u>Anastas, supra</u>; <u>see also, Candland, supra</u>.

[8] The leading "bad check" case in this district is <u>Total Television, Inc. v. Lewsadder</u> *(In Re Lewsadder)*, 84

(continued...)

Claim #2:

Claim #2 seeks a declaration that certain judgments entered after the default judgment be declared nondischargeable under § 523(a)(6). I will refer to these as "supplemental judgments."

A § 523(a)(6) claim is one for willful and malicious injury. In order to meet the "willful" prong, the court must find a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L. Ed. 2d 90 (1998). Debts or losses that arise from injury inflicted recklessly or negligently do not give rise to liability under § 523(a)(6). Id. at 64, 118 S. Ct. at 978. Stated differently, a debtor must either subjectively want to cause the injuries that the plaintiff suffered or subjectively believe that such injuries are substantially certain to result from his conduct. Petralia v. Jercich *(In re Jercich)*, 238 F.3d 1202 (9th Cir. 2001). It is not sufficient that, viewed objectively, there was a substantial certainty that the debtor's conduct would cause harm. Carrillo v. Su *(In re Su)*, 290 F.3d 1140 (9th Cir. 2002).

As to the "malicious" prong, a malicious injury involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) which is done without just cause or excuse." Jercich, supra. at 1209 (internal quotation omitted). The Bankruptcy Appellate Panel has since clarified (in a case involving "conversion"), the "malice" element:

> Post-Geiger, the 'done intentionally' element of a 'malicious' injury brings into play the same subjective standard of intent which focuses on the converter's knowledge of harm to the creditor. *See Jercich*, 238 F.3d at 1209. In *Jercich*, an injury was determined to be 'malicious' because, in relevant part, 'the state court found Jercich knew he owed Petralia the wages and that injury to Petralia was substantially certain to occur if the wages were not paid.' *Id.*

Thiara v. Spycher Brothers, *(In re Thiara)*, 285 B.R. 420, 434 (9th Cir. B.A.P. (E.D. Cal.) 2002).

Plaintiff relies on the collateral estoppel effect of the supplemental judgments.

Collateral estoppel principles apply in § 523 litigation. Grogan v. Garner, 498 U.S. 279, 284 n.11, 111 S.Ct. 654, 658, 112 L. Ed. 2d 755, __ (1991). In determining the collateral estoppel effect of the supplemental judgments I must apply the forum state's collateral estoppel principles. Gayden v. Nourbakhsh *(In Re Nourbakhsh)*, 67 F.3d 798 (9th Cir. 1995).

Under Oregon law, issue preclusion applies when

1. The issue in the two proceedings is identical.
2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.
3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.
4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

>   5. The prior proceeding was the type of proceeding to which this court will give preclusive effect.

Nelson v. Emerald People's Utility Dist., 318 Or. 99, 104, 862 P.2d 1293, 1296-7 (1993) (internal citations omitted).[9]

Issue preclusion applies to an issue of either fact or law. Drews v. EBI Companies, 310 Or. 134, 140, 795 P.2d 531, 535 (1990).

The first "supplemental" judgment is the contempt judgment entered on October 8, 2003 The judgment gave Defendant jail time, but suspended it, and put him on probation. It also ordered him to appear at a re-set judgment debtor's examination. Finally, it awarded Plaintiff $785.00 in attorney's fees. However, those fees have been satisfied.

The second "supplemental" judgment was entered on August 18, 2004 as a contempt judgment for Defendant's failure to comply with the November 17, 2003 order requiring turnover of the vehicles. It revoked Defendant's probation and awarded Plaintiff $500.00 in attorney's fees. The judgment makes an express finding that Defendant was in willful contempt of the November 17, 2003 order. See also, ORS 33.015. Many courts to have considered the issue hold that a contempt judgment meets the § 523(a)(6) standard. See, Williams v. International Brotherhood of Electrical Workers Local 520 *(In Re Williams)*, 337 F.3d 504 (5th Cir. 2003); Siemer v. Nangle *(In Re Nangle)*, 274 F.3d 481 (8th Cir. 2002). Here, even if the August 18, 2004 judgment did not establish the § 523(a)(6) elements as a matter of law, there being no contradictory evidence adduced, I would nonetheless infer willful and malicious injury from Defendant's course of conduct.

## Conclusion

For the reasons stated above, I find no genuine issue of material fact exists, and that Plaintiff is entitled to judgment as a matter of law that the $500.00 monetary award in the August 18, 2004 supplemental judgment is excepted from discharge under § 523(a)(6).

On all other claims, I find genuine issues of material fact, and therefore deny summary judgment.

---

[9] The party asserting collateral estoppel or issue preclusion bears the burden of establishing the identity of issues and parties, and the matters actually litigated, decided and necessary to a final decision. Once this burden is met, the burden shifts to the party against whom estoppel is sought to present evidence of circumstances indicating the absence of a full and fair opportunity to contest the issue or other considerations which would make the application of issue preclusion unfair.

In re Dutton, 1995 WL 759031, 2 (Bankr.D.Or. 1995)(internal citations omitted).

Messrs. Marshall & Rollema
January 25, 2005
Page-9

      The above constitute my findings of fact and conclusions of law under FRBP 7052; they shall not be separately stated. An order consistent herewith shall be entered.

                                Very truly yours,

                                ALBERT E. RADCLIFFE
                                Chief Bankruptcy Judge

AER:vhd